## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WENDIE ROSS,                                    )
                                                )
            Plaintiff,                   )
                                                )
      v.                                    )
                                                )    Civil Action No. 08-338 Erie
COMMISSIONER OF                                 (
SOCIAL SECURITY,                                )
                                                )
            Defendant.                    )

## <u>MEMORANDUM OPINION</u>

McLAUGHLIN, SEAN J., J.

       Plaintiff, Wendie Ross, commenced the instant action on December 5, 2008, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 *et seq*.  Plaintiff  filed an application for DIB on June 28, 2004, alleging disability since May 28, 1995, which was later amended to an onset date of September 22, 2001 (Administrative Record, hereinafter "AR", at 18; 66-68; 621-622).  Her application was initially denied, and she requested a hearing before an administrative law judge ("ALJ") (AR 46).  A hearing was held on January 19, 2007, and following this hearing, the ALJ found that the Plaintiff was not disabled at any time through the date of the decision, and therefore, was not eligible for DIB benefits (AR 18-28).

       Plaintiff's subsequent request for review by the Appeals Council was granted (AR 13A-13D).  On August 8, 2008 the Appeals Council issued a decision adopting the ALJ's decision in part, and concluded that the Plaintiff was not disabled under the Act (AR 10-13).  The instant action challenges these decision, and presently pending before the Court are cross-motions for summary judgment.  For the reasons set forth below, the Plaintiff's motion will be denied and the Defendant's motion will be granted.

# I. BACKGROUND

Plaintiff was forty-eight (48) years old on the date last insured (AR 13; 27).  She has a Bachelor of Arts degree, with past relevant work experience as an income maintenance caseworker for the Pennsylvania Department of Public Welfare (AR 95; 83; 117; 624).  Plaintiff was previously awarded DIB benefits due to myelofibrosis on September 1, 1995, but those benefits were terminated in December of 1999 upon a finding of medical improvement in her condition (AR 18; 86).

Plaintiff completed a Daily Activities Questionnaire and indicated that she was able to wash dishes, fold clothes and clean the kitchen, dining and family rooms (AR 73).  She went grocery shopping once a week and cooked for herself and husband several days a week (AR 73).  She reported that she was able to care for her personal needs without assistance, watch television, use the computer, read magazines and novels, manage money and pay bills and drive approximately 80 miles a month (AR 74).  She claimed an inability to climb stairs such as to ride a bus and stated she had trouble getting in and out of the back seat of a car (AR 75).  Plaintiff also reported she never slept through the night (AR 75).

Plaintiff noted that she was able to care for her two cats (AR 104).  She was able to load and unload bags from the car, but needed to rest when shopping (AR 105).  Plaintiff reported that she occasionally went out with a girlfriend and went for car rides with her husband (AR 106; 108).  She stated that she could lift 40 pounds and carry 25 pounds a short distance (AR 106).  Plaintiff claimed she had trouble reading and comprehending instructions, and suffered from daily fatigue (AR 109-110).  She claimed she suffered from constant pain and burning in her hips and legs, as well as pain in her joints, shoulders and back (AR 111).

*Dr. Joseph Deimel*

The record contains treatment notes from Dr. Joseph Deimel from March 1996 (AR 121).  These treatment notes reflect that the Plaintiff had a history of myelofibrosis, hypertension, an old seizure disorder, diabetes, obesity and depression, as well as a "questionable" history of lupus

(AR 121-124; 301).  Plaintiff took Mysoline for her seizure disorder, however, Dr. Deimel repeatedly advised the Plaintiff to stop taking it since the dosage amount was not therapeutic (AR 121; 600).  Dr. Deimel also has repeatedly advised the Plaintiff to lose weight and gain control of her diet, and was of the view that most of her health problems would cease if she lost 60 pounds (AR 298; 300; 600).

*Dr. Philip Symes*

Plaintiff has also been treated by Dr. Philip Symes since January of 1994 for anemia secondary to her myelofibrosis diagnosis (AR 399-407).  His progress notes from January 31, 2000 through the Plaintiff's last insured date are essentially unremarkable (AR 302-304; 320; 417-419 ).  Dr. Symes noted on January 31, 2000 that her principle problem seemed to be ongoing depression (AR 417).  Treatment notes reflect that the Plaintiff's lowest hemoglobin[1] level during this period was 12.1, and Dr. Symes found that her myelofibrosis was in remission and her anemia had completely resolved (AR 303; 320).

*Dr. Edward Engel*

Plaintiff was seen by Dr. Edward Engel beginning on July 28, 2000 upon referral by Dr. Deimel (AR 339; 397).  Plaintiff complained of knee, neck, shoulder and upper back pain, as well as weakness in her hands (AR 397).  Dr. Engel noted that the Plaintiff's myelofibrosis had been in remission for three years, her diabetes was controlled with oral hypoglycemia and she had not had any seizures in a while (AR 396).  Plaintiff's physical examination was unremarkable except for some puffiness of the fingers and some ligament laxity in the knees (AR 396).  Dr. Engel prescribed Vioxx for her intermittent joint flare ups and ordered a serologic work up (AR 396).

In a follow up visit on January 26, 2001, Plaintiff reported that the Vioxx had "helped her joints pretty well" (AR 394).  Plaintiff reported a past history of blood pressure problems and

---

[1]Hemoglobin is a protein in red blood cells that carries oxygen.  Normal results vary, but in general are: Male: 13.8 to 17.2 gm/dL; Female: 12.1 to 15.1 gm/dL. http://www.nlm.nih.gov/medlineplus/ency/article/003645.htm (last visited 2/26/10).

indicated that she had not taken her anti-hypertensive mediation that morning (AR 394).  Her weight was recorded at 290 pounds and her blood pressure was 162/100 (AR 394).  Dr. Engel assessed the Plaintiff with a history of lupus and recommended a trial of Plaquenil (AR 394).

On September 21, 2001, the Plaintiff reported to Dr. Engel that she was not feeling well and was having problems with her blood glucose (AR 393).  She claimed she felt more depressed and had trouble sleeping (AR 393).  Dr. Engel assessed her with a history of lupus, although no ulcerations were found on examination; visual problems related to diabetic retinopathy;[2] and leg ulcers (AR 393).  On December 20, 2001, Plaintiff complained of leg aches and right arm pain (AR 391).  Dr. Engel found no definite synovitis on examination and reported that her hips, knees and ankles "move[d] well" (AR 391).  He indicated that it was unclear whether her musculoskeletal pain was due to inflamation (AR 391).

In a follow up visit on March 19, 2002, Plaintiff complained of "having a lot of aches and pains" but was "mostly bothered" by gastritis and reflux problems (AR 325).  Dr. Engel recorded the Plaintiff's weight at 282 pounds and her blood pressure was 112/64 (AR 325).  She was assessed with an elevated sedimentation rate of "unclear etiology", diabetes and history of myelofibrosis (AR 325).  Dr. Engel was of the opinion that the Plaintiff needed "general conditioning, aerobic exercise, [and] weight loss" to improve her energy level (AR 325).

Plaintiff returned to Dr. Engel on December 10, 2002, who found no definite synovitis on examination (AR 389).  Her shoulder range of motion was limited on external rotation, but was otherwise reasonably full (AR 389).  Dr. Engel found no local joint warmth, her knees had some crepitus on passive motion, and her hips were symmetric on rotation (AR 389).  Plaintiff complained to Dr. Engel on June 10, 2003, that she was having knee and wrist pain, and had

---

[2]Diabetic retinopathy is a complication of diabetes that results from damage to the blood vessels of the light-sensitive tissue at the back of the eye (retina). At first, diabetic retinopathy may cause no symptoms or only mild vision problems but eventually it can result in blindness. http://www.mayoclinic.com/health/diabetic-retinopathy/DS00447 (last visited 3/3/10).

some cognitive dysfunction (AR 388).  He assessed her with a history of lupus, recommended an x-ray for her knee symptoms, and discussed weight loss (AR 388).

On July 1, 2003, Plaintiff returned to Dr. Engel, who noted that her x-rays failed to show significant degenerative changes in her knee (AR 387).  Plaintiff received a Synvisc injection in her right knee, and Dr. Engel assessed her with mild osteoarthritis limiting her activities of daily living (AR 387).  Plaintiff reported on July 7, 2003, that the injection "seemed to help some" and Dr. Engel administered a second injection (AR 386).  Plaintiff also complained of headaches and that medications were not effective (AR 386).  Plaintiff received a third injection on July 15, 2003, and Dr. Engel noted her achiness was mild and her lupus was "reasonably stable" (AR 385).

On July 30, 2003, Dr. Engel completed a Medical Report on a State Employees' Retirement System form (AR 426-427).  Dr. Engel reported that the Plaintiff had a history of lupus, knee pain due to osteoarthritis, myelofibrosis, diabetes mellitus and GERD (AR 427).  Dr. Engel found that the Plaintiff's ability to perform the duties required by her Commonwealth employment was "poor" (AR 427).

On January 20, 2004, Plaintiff reported left flank pain and Dr. Engel noted some bilateral rib tenderness on examination, but there was no focal tenderness on palpation (AR 384).  Dr. Engel reported that the Plaintiff's knees were "good" following the Synvisc injections, and her hips, knees and ankles moved "well" (AR 384).  Her weight was recorded at 258 pounds and her blood pressure was at 148/96 (AR 384).  He found her lupus was not symptomatic, but enlarged lymph nodes were reported by the Plaintiff (AR 384).  On July 27, 2004, Plaintiff reported to Dr. Engel an increase in her blood sugar secondary to being "less strict with her diet" (AR 383).  Physical examination revealed only mild crepitus in the knees, she exhibited a "good grip," and her wrist, elbow and shoulder moved "reasonably well" (AR 384).  Dr. Engel noted that her osteoarthritis seemed to be most prominent in her knees (AR 384).

On August 14, 2006, Dr. Engel completed a form entitled "Medical Statement Regarding Social Security Disability Claim" (AR 585). He listed her diagnoses as "arthralgias with evidence of autoimmunity (Lupus) [and] GERD", and stated that she had mild joint aches and stiffness for which she took "NSAID's [and] analgesics" (AR 585). With respect to her work capacity, Dr. Engel circled "None" (AR 585).

*Dr. Gary Pasqualicchio*

On November 11, 2004, Dr. Gary Pasqualicchio evaluated the Plaintiff pursuant to the request of the Pennsylvania Bureau of Disability Determination (AR 507-510). Plaintiff reported that her diabetes was under control, her depression had decreased some while on Wellbutrin, and that her last seizure had occurred in 1981 (AR 507). She further reported a history of leg pain, hypertension and fatigue (AR 508). Dr. Pasqualicchio found that her blood sugar was within normal limits (AR 507). On physical examination, Dr. Pasqualicchio found that the Plaintiff had "very minimal difficulty" in going from the chair to the exam table and did not require assistance (AR 508-509). Her motor strength was unremarkable except for slightly diminished strength in her right leg (3.5/5), and some minimal sensory deficit in the left foot (AR 509). Dr. Pasqualicchio found that the Plaintiff's gait was normal, she was able to walk heel to toe and her shoulder, hip, cervical and lumbar range of motion were all normal (AR 509).

Dr. Pasqualicchio diagnosed the Plaintiff with non-insulin-dependent diabetes, lupus, hypertension, depression, myelofibrosis and a history of seizure disorder (AR 510). With respect to the Plaintiff's functional capacity, Dr. Pasqualicchio opined that the Plaintiff was capable of: lifting and carrying two to three pounds (based upon the Plaintiff's statements that this was the maximum amount she could carry); standing and walking for fifteen minutes without pain in her legs; sitting for less than six hours with position changes; was incapable of operating hand or foot controls; and was precluded from bending, kneeling, stooping, crouching, balancing or climbing (AR 509).

*Dr. Sean Su*

Dr. Sean Su performed a psychiatric evaluation of the Plaintiff on July 19, 2001 (AR 378-379).  Plaintiff reported a past history of outpatient psychiatric treatment for depression, mood swings and irritability, although her mood swings had decreased in severity while on Celexa (AR 378).  Dr. Su found the Plaintiff's mood to be depressed and somewhat anxious, however, she denied any suicidal or homicidal thoughts (AR 379).  Dr. Su assessed the Plaintiff's Global Assessment of Functioning ("GAF") score as 60[3] and continued her medications (AR 379).

Plaintiff was seen by Dr. Su every few months from September of 2001 through her last insured date (AR 367-377; 526-529).  His treatment notes reveal that the Plaintiff often had a blunt affect, was irritable and had ongoing complaints of depression (AR 372-376; 526-529).  Between March 8, 2004 and April 1, 2005, Dr. Su indicated that the Plaintiff's GAF scores remained between 55 to 60 and there were no reports of any suicidal or homicidal thoughts (AR 367-369; 526-529).

On April 1, 2005, Dr. Su completed a form entitled "Medical Assessment of Ability to do Work-Related Activities (Mental)" and found that the Plaintiff was "seriously limited but not precluded" in her ability to follow work rules, relate to co-workers, deal with the public, use her judgment, interact with supervisors, deal with work stress, function independently, maintain concentration, carry out simple, detailed or complex job instructions, maintain her personal appearance and demonstrate reliability (AR 522-523).  He further concluded she had "no useful ability" to behave in an emotionally stable manner and relate predictably in social situations due to her "extreme mood instability [and] depression" (AR 523).  While Dr. Su found the Plaintiff's

---

[3]The GAF scale, designed by the American Psychiatric Association, ranges from zero to 100 and assesses a person's psychological, social and occupational function.  *See Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR) (4th ed. 2000).  A GAF score between 51 and 60 indicates some moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functions (e.g., few friends, conflicts with peers or co-workers).  *Id.*

GAF score remained at 60, he concluded that she had no functional work capacity (AR 521; 524).

*Dr. Sharon Tarter*

On September 4, 2004, Dr. Sharon Tarter, a state agency reviewing psychologist, reviewed all the medical evidence of record and completed a Mental Residual Functional Capacity Assessment form (AR 491-506). Dr. Tarter found that the Plaintiff was not significantly limited in a number of work-related areas, and was only moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods and respond appropriately to changes in the work setting (AR 504-505).

Dr. Tarter found that the Plaintiff's basic memory processes were intact, and she had the capability of working within a schedule at a consistent pace (AR 506). Dr. Tarter further found that she could carry out short simple instructions, complete an ordinary workweek, adapt to workplace changes and perform repetitive work without constant supervision (AR 506). She concluded that the Plaintiff could "meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment" (AR 506).

*Dr. V. Rama Kumar*

On December 6, 2004, a state agency reviewing physician, Dr. V. Rama Kumar, reviewed the medical evidence of record and completed a Physical Residual Functional Capacity Assessment form finding that the Plaintiff could occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; was capable of standing and walking for about six hours in an eight hour workday; and had the ability to sit for six hours (AR 511-512). He further found she had no limitations in pushing, pulling or using hand or foot controls; could never balance, kneel or crawl; and could only occasionally climb stairs, stoop and crouch (AR 512-513).

Dr. Kumar found that the Plaintiff retained the ability to care for herself, maintain her home and drive a car (AR 519). He noted she had pursued appropriate follow up care for her impairments and that her prescribed medications had been relatively effective in controlling her symptoms (AR 519). Dr. Kumar found Dr. Pasqualicchio's opinion less persuasive because it was inconsistent with the medical and non-medical evidence in the record (AR 519).

*Administrative Hearing Testimony*

Plaintiff testified that she was in constant pain which interfered with her ability to concentrate (AR 625).  She claimed that her feet, calves and knees ached and burned, and that she had pain in her neck, shoulders, back and wrist (AR 626).  Plaintiff further claimed she felt depressed "most of the time" (AR 626).  She testified that she suffered from arthritis related to her lupus and that her diabetes was not well controlled (AR 628).  She also testified that she had resumed injection therapy for her knees (AR 628).  Plaintiff further complained of difficulty with fatigue and testified that she usually took a nap during the day (AR 630-631).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as the Plaintiff, who could perform sedentary work with a sit/stand option at one hour intervals, who was incapable of balancing, kneeling or crawling, but needed to avoid tasks requiring contact with the general public or large crowds (AR 632).  The expert opined that such an individual could perform the job of a packager, general clerk in an office or surveillance system monitor (AR 632-633).

Following the hearing, the ALJ issued a written decision finding that the Plaintiff was not entitled to a period of disability or DIB within meaning of the Social Security Act (AR 18-28).  The Appeals Council granted the Plaintiff's request for a review of the ALJ's decision, and ultimately concluded that the Plaintiff was not disabled under the Act (AR 10-13).  Plaintiff subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971).  It has been defined as less than a preponderance of evidence

but more than a mere scintilla.  *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity.  42 U.S.C. § 423(d)(1)(A).  In order to be entitled to DIB under Title II, a claimant must additionally establish that her disability existed before the expiration of her insured status.  42 U.S.C. § 423(a),(c).  The ALJ found that the Plaintiff met the disability insured status requirements of the Act through December 31, 2004 (AR 20).  The Appeals Council found however, that the Plaintiff met the disability insured status requirements through March 31, 2005 (AR 12).

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability.  *Bowen,* 482 U.S. at 141.  If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past.  *Id.*  If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform.  *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

*Jesurum*, 48 F.3d at 117.  The ALJ determined that the Plaintiff's obesity, depression, diabetes mellitus, diabetic retinopathy, restrictive lung disease, a history of a foot fracture and arthralgias

were severe impairments, but determined at step three that she did not meet a listing (AR 20-25). Despite her impairments, the ALJ found that she was capable of performing sedentary work where she could remain seated most of the work day, with an option to sit or stand at intervals of about one hour, without engaging in any balancing, kneeling, stooping, crouching or crawling, and avoiding tasks that required dealing with the general public or large crowds (AR 25). The Appeals Council amended this finding however, and concluded that the Plaintiff could "perform activities at the sedentary exertional level with an option to sit or stand at intervals of about one hour" and was unable to "balance, kneel, or crawl" and needed to "avoid tasks that require dealing with the general public or being in large crowds." (AR 12). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 27-28). Again, this determination must be affirmed unless it is not supported by substantial evidence. *See* 42 U.S.C. §405(g).

Plaintiff argues that the ALJ erred in rejecting the opinions of Drs. Engel and Su that she was precluded from working full-time. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3dCir. 1999)) (citations omitted); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008). An ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) (holding that "the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence" not "simply by having the administrative law judge make a different judgment"). A treating physician's opinion is given controlling weight where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

11

[the] case record. ...”  *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).  Finally, an ALJ's decision to reject or discount a treating physician's opinion must be explained in his or her decision.  *See Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000) ("Where the Secretary is faces with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

The ALJ declined to accord Dr. Engel's June 10, 2003 opinion (AR 426-427) significant weight because he found it conclusory and contrary to the underlying treatment records (AR 26). These records reflect that the Plaintiff's physical examinations were consistently unremarkable, injection therapy helped relieve her knee pain, Dr. Engel characterized her joint aches as "mild" and recommended that she undergo general conditioning, aerobic exercise and weight loss (AR 325; 384; 389; 391; 396).  The ALJ noted that Dr. Engel listed myelofibrosis as one of plaintiff's diagnoses, however, the record clearly established, and was stipulated to by the Plaintiff, that this disease was in remission and not a basis for disability benefits.  Plaintiff argues that the ALJ ignored her other impairments, as well as the resulting symptoms, in evaluating Dr. Engel's opinion.  *See* Plaintiff's Brief p. 15.  The ALJ's decision reflects, however, that he considered and addressed all of the Plaintiff impairments, including the corresponding symptoms, in his decision:

> At [the] hearing the claimant testified that she has pain in many of her joints.  This complaint also has been expressed to Dr. Engel, who is a board-certified rheumatologist.  A letter from Dr. Engel indicated that she had nonspecific migratory arthralgias possibly secondary to her history of lupus.  In any event, the pain appeared to respond to the use of NSAID medication on an as needed basis.  At a point closer to the date of last insured, on July 27, 2004, Dr. Engel again addressed the pain complaints.  He reported a diagnosis of osteoarthritis, most prominently involving the knees, and he prescribed Ultram for relief of pain.  The doctor's records reflect that the claimant's lupus has been quiescent, but he attributed her current pain symptoms to that history.

(AR 22).

Similarly, the Plaintiff claims that the ALJ erred in rejecting Dr. Su's opinion on the basis that it was on a form completed one day after the Plaintiff's date last insured.  *See* Plaintiff's

Brief p. 16.  The ALJ did not reject Dr. Su's opinion on this basis, rather, he found that Dr. Su's opinion was "purely conclusory, [and] without any supporting explanation or rationale."  (AR 26).  He further discounted the opinion as "weak evidence at best" since it was on a fill in the blank type form without any supporting explanation or rationale (AR 26).  *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).  The ALJ also pointed out that Dr. Su consistently considered the Plaintiff's depression stable, assigning her GAF scores of 60, which were inconsistent with his finding that the Plaintiff lacked the mental functional capacity to work (AR 26).  Substantial evidence supports the ALJ's refusal to afford the opinions of Dr. Engel and Dr. Su significant weight.

Plaintiff further challenges the ALJ's rejection of Dr. Pasqualicchio's opinion with respect to her functional limitations.  Dr. Pasqualicchio was a consulting physician who examined the Plaintiff pursuant to the request of the Commissioner.  The "treating physician rule" does not apply to a consulting physician's opinion.  *Mason*, 994 F.2d at 1067 (doctrine had no application to physician who examined claimant once).  Nonetheless, the Commissioner's regulations provide that the ALJ must consider the extent to which the opinion is supported by a logical explanation, the degree of the medical source's specialization in a relevant field, and the extent to which the source's opinion is consistent with the entirety of the evidence.  *See generally* 20 C.F.R. § 404.1527(d)(1)-(6).

The ALJ evaluated Dr. Pasqualicchio's opinion consistent with the above standards.  He assigned his opinion minimal weight because it was inconsistent with the narrative findings in his report and was inconsistent with the evidence in the record as a whole (AR 26).  Dr. Pasqualicchio's findings that the Plaintiff could only lift and carry two to three pounds was not supported by the physical examination he performed and was further contradicted by the Plaintiff's own admission that she could lift 40 pounds and carry 25 pounds (AR 106, 509).  Plaintiff contends that the ALJ improperly dismissed his opinion based upon the opinion of the non-examining state agency physician, Dr. Kumar.  It is well-settled, however, that the findings of a non-examining physician may be substantial evidence defeating contrary opinions.  *Accord,*

*Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (ALJ did not err in rejecting opinion of treating physician in favor of opinions from state agency physicians were treating physicians' opinions were conclusory and unsupported by the medical evidence).

Plaintiff's final argument is that the ALJ erred with respect to her residual functional capacity ("RFC").  In determining a claimant's RFC, an ALJ must consider all the relevant evidence.  *See* 20 C.F.R. § 404.1545(a); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).  "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"  *Burnett,* 220 F.3d at 121, (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a).  An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner.  20 C.F.R. § 416.927(e)(2).  Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5.

Plaintiff contends that the ALJ improperly omitted her alleged deficits in maintaining concentration, persistence and pace in determining her RFC.  However, the ALJ's refusal to include those alleged deficits was supported by substantial evidence.  As the ALJ observed:

> "Mrs. Ross also complained that she cannot concentrate and loses track of her thoughts in the middle of a sentence.  However, no such difficulty was observed during her extensive testimony.  Moreover, as previously noted, her extensive activities in reading and in spending hours on the computer contradict her alleged limitations in concentration and attention."

(AR 25).

Additionally, because this Court has already determined that no error occurred in the ALJ's evaluation of the medical evidence with respect to the Plaintiff's alleged physical

impairments, I find no error in the physical limitations ascribed to Plaintiff in the ALJ's RFC assessment.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision will be affirmed.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WENDIE ROSS,              )
                                )
         Plaintiff,      )
                                )
       v.                 )
                                )     Civil Action No. 08-338 Erie
COMMISSIONER OF     (
SOCIAL SECURITY,     )
                                )
         Defendant.    )

## <u>ORDER</u>

_____AND NOW, this 10th day of March, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 8] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 10] is GRANTED.  JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Wendie Ross.  The Clerk is directed to mark the case closed.

                                               s/ Sean J. McLaughlin
                                             United States District Judge

cm: All parties of record.